OPINION
{¶ 1} Defendant-appellant Public Entities Pool of Ohio (PEP), appeals from a summary judgment rendered against it on its claim that it did not owe uninsured/underinsured motorist coverage to plaintiff Angela Jackson. PEP contends that the trial court erred by finding that its policy constituted insurance for the purposes of determining coverage, and by finding that its coverage was primary.
 {¶ 2} We conclude that there are no genuine issues of material fact with regard to the issue of coverage. We conclude that, for purposes of determining contractual coverage, PEP did provide insurance, and its coverage is primary. Therefore, the judgment of the trial court is Affirmed.
 I {¶ 3} This insurance coverage case arises out of an April, 2005 automobile accident involving plaintiff Angela Jackson and defendant Eugene McGinnis. At the time of the accident, Jackson was operating a City of Riverside police cruiser while in the scope of her employment as a Riverside police officer. Jackson suffered injuries when McGinnis's vehicle collided with the cruiser.
 {¶ 4} Jackson filed suit against McGinnis for injuries resulting from the collision. She also asserted a claim against her personal insurance carrier, Buckeye State Mutual Insurance Company (Buckeye) for uninsured/underinsured motorist coverage. Thereafter PEP was added as a defendant. PEP, organized under the authority of R.C. 2744.08(A)(2), is a joint self-insurance pool comprised of various political agencies and *Page 3 
subdivisions. PEP provides liability insurance, as well as uninsured/underinsured motorist coverage, for the City of Riverside pursuant to a Legal Defense and Claim Payment Agreement (LDCPA), which was in effect at the time of the collision between Jackson and McGinnis.
 {¶ 5} Following discovery, PEP filed a motion for summary judgment in which it argued that Jackson was not entitled to uninsured/underinsured motorists coverage under its policy. PEP's argument was based upon the claim that it was "entitled to a reduction equal to any amount payable under workers' compensation and all amounts available under any applicable automobile insurance policy, to any damages payable by PEP." PEP further argued that the amounts payable by Buckeye and BWC exceed the amount of coverage provided in the LDCPA, thus relieving PEP of any liability.
 {¶ 6} Thereafter, Buckeye also filed a motion for summary judgment arguing that "because PEP's coverage is the primary coverage and the two policies provide equal coverage, Buckeye is entitled to a complete set-off." Buckeye further argued that because Jackson was driving a vehicle she did not own, its policy coverage is excess to PEP's policy.
 {¶ 7} In rendering summary judgment in favor of Buckeye, the trial court concluded that PEP is the primary coverage provider and that Buckeye's coverage is excess. The trial court's decision was based upon the conclusion that "insurance follows the car," and the fact that the car driven by Jackson at the time of the accident was owned by the City of Riverside. The trial court further based its conclusion on the language in Buckeye's policy which states that "any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing *Page 4 
such coverage on a primary basis." The trial court concluded that Buckeye is entitled to a complete setoff as its "policy excludes payment in cases where another entity is responsible to pay."
 {¶ 8} From the summary judgment rendered against it, PEP appeals.
 II {¶ 9} PEP's sole assignment of error states as follows:
 {¶ 10} "THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT-APPELLANT'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF SET OFF AND NON-LIABILITY."
 {¶ 11} PEP contends that the trial court erred in rendering summary judgment against it, and that it is entitled to a full set-off of benefits payable to Jackson. In support, PEP argues that the coverage offered under the LDCPA is not insurance. Thus, PEP contends that the principle of "insurance follows the car," which the trial court relied upon in its opinion, could not be applied to the coverage provided by the LDCPA, and that the "other insurance" clause in the Buckeye policy cannot operate to make PEP's coverage primary. Finally, PEP contends that the set-off provisions in its policy entitle it to a complete set-off reducing its liability for Jackson's damages to zero.
 {¶ 12} Pursuant to Civil Rule 56(C), summary judgment is proper when no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. When reviewing a trial court's grant of summary judgment, an appellate court conducts a de novo review. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102. *Page 5 
 {¶ 13} The interpretation of an automobile liability insurance policy presents a question of law that an appellate court reviews without deference to the trial court. Nationwide Mut. Fire Ins. Co. v. GumanBros. Farm, 73 Ohio St.3d 107, 108, 1995-Ohio-214; Alexander v. BuckeyePipeline Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. When interpreting an automobile liability insurance policy, if the language used is clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning. Cincinnati Indemn. Co. v. Martin, 85 Ohio St.3d 604,607, 1999-Ohio-322.
 {¶ 14} We begin with PEP's argument that "the benefits provided by a risk pool are not insurance proceeds." PEP is correct in its contention that it is not considered an insurance company. R.C. 2744.081(E)(2) provides that "a joint self-insurance pool [formed pursuant to R.C. 2744.08(A)(2)] is not an insurance company[,] and [i]ts operation does not constitute doing an insurance business and is not subject to the insurance laws of this state." Furthermore, appellate courts have determined that this provision exempts these pools from insurance laws and regulations. For example, this court has held that a joint self-insurance pool is not subject to the requirements imposed by R.C. 3937.18(A), which previously mandated that an insurance company offer uninsured/underinsured coverage whenever it made an offer for liability insurance.[1] Public Entities Pool of Ohio v. Sexton, Montgomery App. No. 17849, *2.
 {¶ 15} However, in this situation, we are not applying administrative rules, regulations or statutes to resolve a question of coverage. Instead, we are interpreting *Page 6 
the language of the contracts involved. To that end, and after reviewing the language of R.C. 2744.08, we conclude that for purposes of contract construction, coverage afforded by joint self-insurance pools is in the nature of insurance coverage. Therefore, we conclude that the trial court did not err by referring to the PEP coverage as insurance when discussing the "other insurance" clauses of the Buckeye policy.
 {¶ 16} PEP next argues that any benefits it may owe shall be reduced by the amount of any other insurance available to Jackson. PEP contends that since its coverage limit is the same as Buckeye's limit, PEP's liability must be reduced to "zero," or a total set-off. In support, PEP relies on the following language contained in the LDCPA:
 {¶ 17} "The damages payable will be reduced by:
 {¶ 18} "1. All amounts paid by the owner or operator of the uninsured automobile or underinsured automobile or anyone else responsible. This includes all amounts paid under any section of this Agreement or any other automobile policy.
 {¶ 19} "2. All amounts payable under any workers compensation law, disability benefits law, or similar law, or any automobile medical payments or personal injury protection coverage.
 {¶ 20} "We are not obligated to make any payment for injury which arises out of the use of an underinsured automobile until after the limits of coverage for all protection in effect and applicable at the time of the occurrence have been exhausted by payment of judgments or settlements."
 {¶ 21} PEP's argument with regard to set-off is based upon the fact that the set-off language in its policy refers to "anyone else responsible," and to "any other *Page 7 
automobile policy." PEP contends that this phrase places responsibility for primary coverage on Buckeye. We disagree. This language, which refers to the owner/operator of an uninsured/underinsured vehicle and anyone else responsible, does not reference other insurance companies. Rather, it refers to any entity responsible for the actual damages — specifically any other tortfeasor, and any insurance policy which they might own. Therefore, we find that this argument regarding the right to set-off without merit.
 {¶ 22} Finally, we turn to the "other insurance" language of the two policies. The policy issued to Jackson by Buckeye contains the following language:
 {¶ 23} "Other Insurance
 {¶ 24} "If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:
 {¶ 25} "* * * *
 {¶ 26} "2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing such coverage on a primary basis.
 {¶ 27} "3. If the coverage under this policy is provided:
 {¶ 28} "* * * *
 {¶ 29} "b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis."
 {¶ 30} The PEP policy contains the following language: *Page 8 
 {¶ 31} "R. Uninsured And/Or Underinsured Motorists
 {¶ 32} "We will pay those amounts that a member is legally entitled to recover as damages from the owner or operator of an uninsured automobile or underinsured automobile.
 {¶ 33} "* * * *
 {¶ 34} "If any member has valid and collectible insurance for an occurrence covered by this Agreement, the benefit provided by this Agreement will be excess over such insurance, except that any member may purchase coverage which is specifically issued to be excess of the benefits provided by this Agreement."
 {¶ 35} There is no question that Jackson is a member covered by the terms of the LDCPA. Furthermore, she is obviously an insured under the Buckeye policy. Both policies contain "other insurance" clauses specifying that their coverage will be excess only when there is another insurance available. However, the Buckeye policy further states that when there is other applicable insurance available, it provides only excess coverage for accidents in which Jackson is operating a vehicle that she does not own. The PEP policy does not contain a comparable provision.
 {¶ 36} The trial court found that Jackson was "driving a vehicle owned by * * * her employer * ** which had a joint self-insurance pool covering the vehicle, including [uninsured/underinsured motorist] coverage." We agree. Furthermore, we conclude that the trial court did not err in determining that the PEP policy was primary. The PEP policy clearly provides coverage to a member injured by an uninsured/underinsured driver. The set-off provisions of the PEP policy do not provide a basis for making Buckeye's policy primary. However, the "owned vehicle" provision in the Buckeye policy clearly *Page 9 
indicates its intent, in this situation, to provide excess coverage, only. Accordingly, we conclude that the trial court did not err in rendering summary judgment in favor of Buckeye.
 {¶ 37} PEP's sole assignment of error is overruled.
 III {¶ 38} The sole assignment of error being overruled, the judgment of the trial court is Affirmed.
BROGAN and GRADY, JJ., concur.
Copies mailed to:
James P. Fleisher Jeffrey C. Turner Boyd W. Gentry Linda L. Lehman Michael C. Thompson Ray C. Freudiger Stuart Tobin Hon. Mary Lynn Wiseman
[1] The statute was subsequently amended to dispense with this requirement. See R.C. 3937.18, eff. 10-31-01. *Page 1