[Cite as *Wetzel v. Auto-Owners Ins. Co.*, 2016-Ohio-5355.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**DARKE COUNTY**

| | |
|---|---|
| SHANE D. WETZEL | : |
| | :    Appellate Case No. 2015-CA-25 |
|      Plaintiff-Appellant | : |
| | :    Trial Court Case No. 13-CV-406 |
| v. | : |
| | :    (Civil appeal from Darke County |
| AUTO-OWNERS INSURANCE COMPANY, et al. | :      Common Pleas Court) |
| | : |
|      Defendant-Appellees | : |
| | : |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of August, 2016.

. . . . . . . . . . .

CRAIG A. DYNES, Atty. Ret. No. 0000724, and RYAN C. DYNES, Atty. Reg. No. 0081278, Dynes & Dynes, LLC, 2840 Alt. SR 49 North, Suite B, Post Office Box 250, Arcanum, Ohio 45304
     Attorneys for Plaintiff-Appellant

GORDON D. ARNOLD, Atty. Reg. No. 0012194, and PATRICK J. JANIS, Atty. Reg. No. 0012194, Freund, Freeze & Arnold, Fifth Third Center, 1 South Main Street, Suite 1800, Dayton, Ohio 45402
     Attorneys for Defendant-Appellees

. . . . . . . . . . . .

HALL, J.

{¶ 1} Shane D. Wetzel appeals from the trial court's entry of summary judgment against him on his complaint seeking underinsured-motorist coverage from appellee

Auto-Owners Insurance Company.

**{¶ 2}** In his sole assignment of error, Wetzel contends the trial court erred in sustaining Auto-Owners' summary-judgment motion. He argues that the inclusion of a "scheduled drivers" list in the subject insurance policy created an ambiguity that resulted in those named on the list becoming "you" for purposes of extended underinsured-motorist coverage.

**{¶ 3}** The present appeal stems from a July 2011 automobile accident. On that date Shane Wetzel owned his own vehicle but he was driving a Chrysler 300 owned by his girlfriend, Jane Hammaker. As Wetzel approached an intersection, another driver, Michael Short, negligently ran a stop sign and struck the Chrysler 300. The accident killed Hammaker and seriously injured Wetzel, whose damages exceeded the tortfeasor's liability-policy limits. Wetzel subsequently sought underinsured-motorist coverage through an Auto-Owners policy issued for his father's trucking company, "Wayne D. Wetzel dba Wayne Wetzel Trucking." Wayne Wetzel was the first and only "named insured" in the Auto-Owners policy. The policy contained a list of "scheduled drivers" that included Shane Wetzel. It also listed five commercial trucks as insured vehicles.

**{¶ 4}** Auto-Owners denied Shane Wetzel's claim for underinsured-motorist coverage under his father's insurance policy. Wetzel responded by filing the present lawsuit. As relevant here, he sought a declaratory judgment regarding his right to underinsured-motorist coverage under the Auto-Owners policy. [1] (*See* Amended

---

[1] Wetzel's amended complaint also included claims against other defendants and an "implied-in-fact" coverage claim against Auto-Owners. The other defendants eventually were dismissed, however, and Wetzel's assignment of error addresses only his claim for underinsured-motorist coverage as an insured under the terms of the Auto-Owners policy. The record also reveals the presence of cross claims and counterclaims. In an April 2016

Complaint, Doc. #32). Auto-Owners later moved for summary judgment. (Doc. #67). The trial court sustained Auto-Owners' motion in an October 7, 2015 judgment entry. (Doc. #86). It held that Wetzel did not qualify for underinsured-motorist coverage under the terms of the policy. (*Id.* at 5-7).This appeal followed.

{¶ 5} The essence of Wetzel's argument is that his inclusion on a "scheduled drivers" list in the Auto-Owners policy created an ambiguity. Wetzel notes that a "scheduled driver" was not defined. Nor did the policy assign any particular coverage to "scheduled drivers." Given this purported ambiguity regarding the purpose and effect of being a scheduled driver, Wetzel argues that the policy must be construed to mean he qualified as an insured who was entitled to underinsured-motorist protection. (Appellant's brief at 7).

{¶ 6} Upon review, we find Wetzel's argument to be unpersuasive. "The interpretation of an automobile liability insurance policy presents a question of law that an appellate court reviews without deference to the trial court." *Jackson v. Pub. Entities Pool of Ohio*, 2d Dist. Montgomery No. 23049, 2009-Ohio-1772, ¶ 13, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995). In construing the terms of an insurance policy, we are guided by the rules of contract interpretation. "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988), syllabus. This rule cannot be used to create ambiguity where none

decision and entry, however, we determined that those claims were moot, and did not preclude the existence of an appealable order, because they were derivative subrogation claims.

exists. *Hacker v. Dickman*, 75 Ohio St.3d 118, 119-20, 661 N.E.2d 1005 (1996). Ambiguity exists only when a provision is susceptible of more than one reasonable interpretation. *Id.* at 120. "Also, '[t]he fundamental goal in insurance policy interpretation is to ascertain the intent of the parties from a reading of the contract in its entirety and to settle upon a reasonable interpretation of any disputed terms in a manner calculated to give the agreement its intended effect.' " *Selective Ins. Co. of Am. v. Arrowood Indemn. Co.*, 2d Dist. Montgomery No. 23400, 2010-Ohio-557, ¶ 11, quoting 57 Ohio Jurisprudence 3d (2005) 394, Insurance, Section 315.

{¶ 7} As relevant here, the Auto-Owners policy provided liability coverage, underinsured-motorist coverage, and extended underinsured-motorist coverage. The liability insurance portion of the policy stated:

> **We** will pay damages for **bodily injury** and **property damage** for which **you** become legally responsible because of or arising out of the ownership, maintenance or use of **your automobile** (that is not a **trailer**) as an **automobile**. **We** will pay such damages:
>
> (1) on **your** behalf;
>
> (2) on behalf of any **relative** using **your automobile** (that is not a **trailer**);
>
> (3) on behalf of any person using **your automobile** (that is not a **trailer**) with **your** permission or that of a **relative**; and
>
> (4) on behalf of any person or organization legally responsible for the use of **your automobile** (that is not a **trailer**) when used by **you**, a **relative**, or with **your** permission or that of a **relative**.

(Doc. #1 at Auto-Owners policy pg. 2).

**{¶ 8}** The policy included the following definitions:

9. **Relative** means a person who resides with **you** and who is related to **you** by blood, marriage, or adoption. **Relative** includes a ward or foster child who resides with **you**. * * *

12. **You** or **your** means the first named **insured** shown in the Declarations and if an individual, **your** spouse who resides in the same household.

13. **Your automobile** means the **automobile** described in the Declarations.

(*Id.* at 1-2).

**{¶ 9}** In light of the foregoing provisions, Shane Wetzel did not have liability coverage at the time of the accident.[2] The only named insured in the Declarations was his father, Wayne Wetzel.[3] Shane Wetzel did not live with his father and, therefore, did not qualify as a resident relative. Shane Wetzel also was not using one of the five trucks identified in the policy at the time of the accident. Nor was he a person or organization

---

[2] We include the liability portion of the policy for context and because the underinsured-motorist portion of the policy refers to it.

[3] In its appellee's brief, Auto-Owners points out that Wayne Wetzel died in November 2010, which was before Shane Wetzel's July 2011 automobile accident. Auto-Owners argues that it had no knowledge of Wayne Wetzel's death and continued to issue policy renewals to "Wayne Wetzel dba Wayne Wetzel Trucking" long after Wayne Wetzel's death and Shane Wetzel's accident. Auto-Owners also argues that Wayne Wetzel's death had no effect on the coverage provided by the policy and did not result in Shane Wetzel automatically becoming the named insured. (*See* Appellee's brief at 20-23). For present purposes, however, we need not consider the impact, if any, of Wayne Wetzel's death. In his sole assignment of error, Shane Wetzel does not argue that Wayne Wetzel's death affected his entitlement to underinsured-motorist coverage. In fact, Shane Wetzel's opening appellate brief does not mention the fact that Wayne Wetzel died prior to the accident. As set forth above, Shane Wetzel's sole argument on appeal is that he qualifies as "you" for purposes of extended underinsured-motorist coverage under the terms of the policy based on his status as a "scheduled driver." Given that Wayne Wetzel's death is not raised as an issue, or even mentioned, in Shane Wetzel's appellate argument, we need not consider it.

legally responsible for the use of one of the trucks.

{¶ 10} With regard to underinsured-motorist coverage, the Auto-Owners policy stated:

>    a. **We** will pay compensatory damages, including but not limited to loss of consortium, any person is legally entitled to recover from the owner or operator of an **underinsured automobile** because of **bodily injury** sustained by an injured person while **occupying** an **automobile** that is covered by **SECTION II – LIABILITY COVERAGE** of the policy.

(*Id.* at Form 79303 (12-090)).

{¶ 11} Shane Wetzel was not injured while occupying an automobile that was covered by the liability-coverage portion of the Auto-Owners policy. As set forth above, the automobiles covered by liability insurance included the five trucks specifically identified in the Declarations. Shane was driving his girlfriend's Chrysler 300, which was not covered by liability insurance under the Auto-Owners policy.

{¶ 12} Finally, the Auto-Owners policy provided extended underinsured-motorist coverage. It stated:

>    **b**. If the first named insured in the Declarations is an individual, this coverage is extended as follows:
>
>    (1) **we** will pay compensatory damages, including but not limited to loss of consortium, **you** are legally entitled to recover from the owner or operator of any **underinsured automobile** because of **bodily injury you** sustain:
>
>    >    (a) when **you** are **occupying** an **automobile** that is not covered by **SECTION II – LIABILITY COVERAGE** of the policy; or

(b) when **you** are not **occupying** any **automobile** that is covered by

**SECTION II – LIABIILTY COVERAGE** of the policy.

(2) The coverage extended in **2.b.(1)** immediately above is also extended

to a **relative** who does not own an **automobile**.

(*Id.*).

**{¶ 13}** Here the first (and only) named insured in the Declarations was Wayne Wetzel. Therefore, the extended underinsured-motorist coverage applied to Wayne Wetzel, and to a spouse living with him, regardless of what vehicle they were in. This is so because the word "**you**" in the policy means the first named insured and a spouse who resides in the same household. Underinsured-motorist extended coverage also applies to a relative, defined as a related person residing with the named insured, provided the relative does not own an automobile. The record reflects Shane Wetzel did *not* live with Wayne Wetzel and Shane *did* own his own vehicle. Consequently, the policy unambiguously did not provide Shane Wetzel with extended underinsured-motorist coverage when a tortfeasor struck his girlfriend's Chrysler 300 that he was driving.

**{¶ 14}** On appeal, Wetzel's sole argument in opposition to our conclusion is that the word "**you**" in the Auto-Owners policy included him. If Wetzel were correct, he would qualify for extended underinsured-motorist coverage under the language set forth above. But we conclude he is not. Wetzel argues that his inclusion on the list of "scheduled drivers" in the policy Declarations is ambiguous because the purpose and effect of being on the list are unclear. Wetzel asserts that a "scheduled driver" is not defined in the policy and that no specific coverage is assigned to a "scheduled driver." He reasons that if any

of the scheduled drivers were operating any of the covered commercial trucks in the course and scope of their employment, the liability provision of the policy would provide coverage. (Appellant's brief at 8). This is so, he asserts, because they would qualify as "**you**" for purposes of liability coverage. (*Id.* at 10). Based on that premise, he reasons that "[i]f the 'scheduled drivers' are 'you' or 'your' for liability coverage then they are 'you' or 'your' for the Extended UIM coverage." (*Id.*).

{¶ 15} We agree with Wetzel that if any of the five scheduled drivers were involved in an accident while driving a covered truck in the course and scope of employment, liability coverage would exist. It would not exist, however, because the scheduled drivers all would qualify as "**you**" for purposes of liability insurance. As set forth above, the word "**you**" in the policy explicitly refers to the first named insured, Wayne Wetzel, not to all five scheduled drivers. Rather, the scheduled drivers all would have liability coverage under the hypothetical in Shane Wetzel's brief because they were driving a covered vehicle with Wayne Wetzel's permission.

{¶ 16} Although the Auto-Owners policy does not expressly state that individuals on the "scheduled drivers" list have the named insured's permission to drive one of the work trucks, that conclusion is unavoidable and self-evident. At the top of the list, instructions advised Wayne Wetzel, the named insured, that "[l]isted below are drivers currently scheduled on this policy." He was told to "compare the list with [his] current records and contact [his] agent with any changes that need to be made." Thus, it is apparent that Wayne Wetzel controlled the names on the list of people "scheduled" to drive his work trucks. By placing a driver's name on the schedule, Wayne Wetzel necessarily gave that driver express permission. We see no other reason for placing a

driver's name on the list.[4] And the liability portion of the policy extended coverage to anyone driving one of the trucks with Wayne Wetzel's permission. Therefore, the scheduled drivers had liability coverage because they were driving the work trucks with Wayne Wetzel's permission, not because they all qualified as "**you**" under the policy. By definition, "**you**" in the Auto-Owners policy *did not* refer to all "scheduled drivers" but only to the "first named insured." The fact that a list of "scheduled drivers" appeared on the Declarations page did not make ambiguous the clear reference to Wayne Wetzel as the named insured.

{¶ 17} In resolving the issue before us, we find persuasive the Connecticut appellate court's reasoning in *Kitmirides v. Middlesex Mut. Assurance Co.*, 65 Conn. App. 729, 783 A.2d 1079 (Conn.App.2001). In *Kitmirides*, the plaintiff was a listed driver on the declarations page of an insurance policy issued to her father in law. After she was injured by an underinsured driver, she sought underinsured-motorist benefits under the policy. She argued that the policy was ambiguous because the purpose and effect of being a listed driver were not explained. In light of that purported ambiguity, she argued that she qualified as "you" for purposes of underinsured-motorist coverage. As in the present case, such coverage was provided to "you," which the policy defined as the "named insured," the plaintiff's father in law. The Connecticut appellate court rejected her argument, reasoning in part:

---

[4] This does not mean, of course, that Wayne Wetzel could not give other people permission to drive a work truck. Nothing in the policy precluded him from doing so. Having a particular driver's name on the list simply removed any doubt regarding the existence of permission for that person.

After a searching review of the record, the parties' briefs, the cases cited therein and the oral argument, we are persuaded that, although the plaintiff's arguments are not implausible, the defendant's reading of the policy is more convincing. The declarations page in this case, even though it lists the plaintiff as an additional driver without defining the rights attaching to that designation, does not, per se, create an ambiguity in the policy's definition of a "Covered person" for a particular coverage. [footnote omitted]. In our view, the policy is not reasonably susceptible to more than one reading with regard to a listed driver's right to underinsured motorist coverage. For underinsured motorist coverage, the policy clearly and unambiguously defines "you," the person covered in the underinsured portion of the policy, as the " 'Named insured' shown in the Declarations...." Because these terms are unambiguous, the coverage provisions as a whole are unambiguous. On the present record, the only person who fits the definition of the "Named Insured" is the plaintiff's father-in-law. He is the only person who is identified as the insured on the declarations page. That identification is not on the same page as the listing of named drivers. He alone requested the policy change that made her an additional driver. * * *

* * * [W]e agree with the defendant's construction of the policy that it issued to the plaintiff's father-in-law. Specifically, we conclude that a person who is a listed driver on the declarations page of an automobile insurance policy, and who is nowhere else listed as an insured, is not entitled to underinsured motorist coverage. The policy's definition of who is an insured

for such coverage is unambiguous. Under the circumstances of this case, the plaintiff cannot require the defendant to compensate her for the injuries that she received as a result of the tortious conduct of an underinsured motorist.

*Id.* at 1083-1084.

{¶ 18} A Missouri appellate court reached the same conclusion in *Eldridge v. Columbia Mut. Ins. Co.*, 270 S.W.3d 423 (Mo.App.2008). Citing *Kitmirides* and case law from Indiana and Kentucky, the *Eldridge* court reasoned:

Victoria Savage was not a resident of John Earnest's household at the time of the accident. Additionally, she is not listed as a "Named Insured" on the Declarations page of the policy. She is listed in the policy only as a "Driver." More specifically, she is listed as a driver for the 2000 Chevrolet Malibu, which is a covered vehicle under the policy but was not involved in the subject accident. Based on the plain language of the insurance agreement, Victoria Savage was a covered driver with regard to the 2000 Chevrolet Malibu, but she was not an insured for any other purposes under the policy.

We disagree with Eldridge's argument that the term "driver" is unclear because it was not defined in the policy. The mere lack of definition does not create an ambiguity. * * * Nothing in the policy suggests that its use of the term has any meaning beyond the plain and ordinary meaning of "driver." Merriam Webster's Collegiate Dictionary, 353 (10th ed.2000) defines "driver" as "one that drives: as a: coachman b: the operator of a

motor vehicle[.]" These definitions are consistent with the everyday use of the word with respect to automobiles and do not create confusion or uncertainty. Further, the double listing of John Earnest in the policy, once as the "named insured" and again in another section of the policy set off with horizontal lines and headed by the bolded words "DRIVER(S) SUMMARY," prevents an understanding that "driver" could have the same meaning as "named insured" under the policy.

Although Missouri has not directly addressed this issue, other jurisdictions have recognized that the designation of "driver" on the declarations page of an insurance policy is not without effect. In *Kitmirides v. Middlesex Mutual Assurance Co.*, 65 Conn.App. 729, 783 A.2d 1079, 1084 (2001), under similar circumstances to those before us, the court held that the policy's definition of an insured is unambiguous when one party is listed as a named insured on the declarations page and another is listed as a driver, a term undefined by the policy. The court concluded that the driver designation serves as dispositive evidence of permission to use a covered vehicle. *Id.* at 1083 n. 7.

Indiana and Kentucky have also rejected the notion that an ambiguity arises when an automobile insurance policy fails to define the term "driver." *Millspaugh v. Ross*, 645 N.E.2d 14 (Ind.Ct.App.1994); *True v. Raines*, 99 S.W.3d 439, 444 (Ky.2003). The Indiana court found that while the designation of driver was significant for some purposes, including the amount of the premium due under the policy, it did not create a right to

coverage under all provisions of the policy. *Millspaugh*, 645 N.E.2d at 16-17. Likewise, North Carolina has held that the term "named insured" unambiguously excludes persons listed only as drivers in policies similar to the one at issue here. *Nationwide Mut. Ins. Co. v. Williams*, 123 N.C.App. 103, 472 S.E.2d 220, 222 (1996). This view is in keeping with Couch on Insurance, which explains that "one listed on the policy, but only in the status of a driver of a vehicle, is not a named insured despite the fact that such person's name was physically on the policy." 7A Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 110:1 (2005).

*Eldridge* at 427-428; *see also Ex parte United Servs. Auto. Ass'n*, 365 S.C. 50, 56, 614 S.E.2d 652 (S.C. App.2005) ("We therefore adopt the majority view and hold that listing an individual as an operator on the declarations page of an insurance policy does not make that individual a named insured.").

{¶ 19} We agree with the foregoing case law, which is equally applicable here. But even if we were to accept Shane Wetzel's argument regarding ambiguity as to the purpose and effect of being a "scheduled driver," we believe the most natural and reasonable interpretation is that the list provides prima facie evidence that a driver whose name appears there has permission to drive one of the work trucks. In any event, no reasonable interpretation of the policy would transform all of the scheduled drivers into "**you**" (which the policy explicitly defines elsewhere as Wayne Wetzel, the first named insured) for purposes of underinsured-motorist coverage. *Compare Georgia Farm Bureau Mut. Ins. Co. v. Wilkerson*, 250 Ga. App. 100, 102, 549 S.E.2d 740 (Ga. App. 2001) ("Although the designation 'driver' may be used to show permission to use the insured

automobile, this meaning is not stated in the policy. But this case does not involve the meaning of listing a driver on the policy. And just because identifying one as a 'driver' may be ambiguous does not make ambiguous the otherwise plain and clear reference to McDowell as the only 'named insured' shown in the Declarations."). In other words, assuming arguendo that the meaning of "scheduled driver" is ambiguous, we know that it does not mean "you" because "you" is clearly defined elsewhere in the policy. We also know that all of the "scheduled drivers" do not qualify as the "first named insured" because the policy specifically identifies Wayne Wetzel, alone, as the first and only named insured.

{¶ 20} On appeal, Shane Wetzel notes that some courts from other states have accepted an argument that the undefined term "driver" is ambiguous and that the ambiguity results in such a "driver" becoming a "named insured." Perhaps more pertinently, he maintains that the *Kitmirides* decision discussed above is at odds with two Ohio cases, *Jensen v. State Automobile Mutual Ins. Co.*, 10th Dist. Franklin No. 04AP-837, 2005-Ohio-4354, and *Roelle v. Coffman*, 3d Dist. Seneca No. 13-97-17, 1997 WL 722775 (Nov. 17, 1997).[5]

---

[5] Wetzel also addresses the cases of *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999), and *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, which limited *Scott-Pontzer*. He argues that they do not apply here because they involved insurance policies that designated a corporation as the named insured whereas the Auto-Owners policy identified an individual, Wayne Wetzel, as the named insured. (Appellant's brief at 19). Wetzel specifically asserts that "[t]he within case is not governed by the Supreme Court of Ohio's holding in *Galatis*." (*Id.*). We agree. In his reply brief, however, Wetzel then suggests that *Scott-Pontzer* and *Galatis do* apply. In fact, he asserts that "[t]his case is controlled by" *Scott-Pontzer* and *Galatis.* (Appellant's reply brief at 6). We are more persuaded by Wetzel's initial position on the issue. *Scott-Pontzer* and *Galatis* involved an allegedly-ambiguous "you" when the named insured was a corporation. Here the named insured was an individual, and we find no ambiguity with regard to the word "you," which the policy clearly defined. Wetzel's argument is different. He contends that the phrase "scheduled driver" is ambiguous and, therefore, that all "scheduled drivers" should be grafted onto the unambiguous definition

{¶ 21} In *Roelle*, Jeanette Bowlin shared a residence with Marc Edward Coffman. They obtained a joint car insurance policy through Motorists Mutual Insurance Company. Bowlin was the named insured, Marc Edward Coffman was listed as a driver, and the policy included their respective cars. The policy provided liability coverage to an "insured," which it defined to include (1) the named insured, (2) a resident spouse of the named insured, (3) anyone using a covered auto of the named insured or the named insured's resident spouse, and (4) a family member of the named insured or the named insured's resident spouse. *Roelle* at *1-2. The issue in the case was whether Marc Edward Coffman's son, Marc Anthony Coffman, was an insured under the policy based on his status as a family member of Marc Edward Coffman.

{¶ 22} Because Marc Edward was listed as a "driver" but was not the named insured or a resident spouse of the named insured, a literal reading of the policy meant that he was not covered at all and, by extension, that his son was not covered as his family member. The Third District rejected this interpretation, reasoning:

> Appellants contend that Marc Edward is an insured under the policy even though he was not Jeanette's spouse nor a named insured listed on the Declarations page of the policy. While Marc Edward was a listed driver and had paid an additional premium to be included on the policy, the policy language does not expressly provide any insurance coverage for named drivers who do not otherwise qualify as named insureds or as family members of the named insured. Appellants argue that to read the policy as

of "you."

providing no coverage to Marc Edward is unreasonable and contrary to the intentions of the contracting parties. As the depositions of Jeanette, Marc Edward, and Randall Mick, Motorists Mutual's own agent, demonstrate, all parties believed Marc Edward would receive insurance coverage as a result of being named on the policy and an additional premium being charged. Since insurance coverage was clearly intended to include Marc Edward, Appellants believe he should receive the same benefits as a named insured. According to Appellants, it follows then that Marc Anthony, as Marc Edward's son, would qualify as [an] insured family member for liability purposes under the Motorists Mutual policy.

On the other hand, while Motorists Mutual concedes that Marc Edward was insured under their policy as a named driver, the company does not agree that he qualifies for the same coverage as a named insured. As a result, Motorists Mutual maintains that Marc Anthony would not be entitled to liability coverage since he is not a family member of Jeanette Bowlin, the only named insured. * * *

* * * We find the automobile insurance policy issued to Jeanette Bowlin and Marc Edward Coffman ambiguous since a "named driver" other than a "named insured" is not defined nor is a "named driver" assigned any coverage limits in the body of the contract. A literal reading of the contract reveals that named drivers who are not also the named insured or a family member of a named insured are not covered under the policy. However, such a reading would be unreasonable given that a premium was charged

by Motorists Mutual for the sale of insurance protection and paid by Marc Edward, as a purchaser of that coverage. Nor would such a reading conform to the intentions of the parties, all of whom agree that Marc Edward was entitled to insurance coverage as a named driver.

Although Motorists Mutual suggests a named driver is entitled to a more limited form of coverage than a named insured, as the drafter of the policy, Motorists Mutual had the opportunity to define the coverage available to named drivers listed on their policies. Its failure to do so results in an ambiguity which must be construed against the insurer. * * * Viewing the contract terms in a light consistent with the intentions of the parties, we find Marc Edward Coffman was an insured, as that term is used in Motorists Mutual's policy, for purposes of liability coverage. As a result, Marc Anthony Coffman is also eligible for liability coverage under Motorists Mutual's policy as a family member of an insured. * * *.

*Id.* at *2-3.

{¶ 23} In *Jensen*, the plaintiff-appellee, Mark Jensen, was struck in a crosswalk by a negligent driver. Jensen lived in an apartment in Columbus, Ohio, but also considered himself a resident of his parents' home in Oregon, Ohio. Jensen's parents had automobile insurance with State Auto. The parents were "named insureds," and plaintiff Jensen was listed as an "additional driver" on the policy. His parents paid a premium to include him on their policy, and he resided with them periodically. As a result of his accident, Jensen sought underinsured-motorist coverage under his parents' policy. The trial court found him entitled to coverage as a resident of his parents' household.

**{¶ 24}** On review, the Tenth District affirmed on alternative grounds. *Jensen* at ¶ 16. Relying on *Roelle*, it found that Jensen's status as an "additional driver" entitled him to underinsured-motorist coverage, reasoning:

> In appellee's request for admissions in this case, State Auto acknowledged appellee is entitled to underinsured motorist coverage and general automobile insurance coverage as a rated driver. Although appellee is listed on the declarations page as an additional driver, an "additional driver" other than a named insured is neither defined, nor assigned any coverage limits in the policy. Thus, we find the policy is ambiguous, as it does not define what coverage is available to additional drivers listed on their policies. Construing the policy in favor of appellee, we find appellee, as an "additional driver," qualified as an "insured" under the State Auto policy. To find otherwise would contravene the intention of the parties, as State Auto charged a premium for insurance coverage, and Mr. Jensen paid a premium to ensure appellee was insured under the State Auto policy.

> * * * State Auto improperly argues that the definition of a "named insured" is inapplicable, contrary to its admission that appellee is insured under the policy. Nonetheless, State Auto admitted underinsured motorist coverage was not limited to an insured's use of a particular automobile when he is a pedestrian. Thus, we find appellant's argument is without merit, and the trial court properly granted appellee's motion for summary judgment.

*Id.* at ¶ 23-24.

{¶ 25} Upon review, we are unpersuaded by Wetzel's reliance on *Roelle* and *Jensen*. In both cases, the policyholder specifically paid a premium to have the disputed person covered. In *Roelle*, the insurance company also agreed that Marc Edward was an insured under the policy as a named driver even though the literal policy terms did not provide him any coverage. Moreover, the Third District found that the insurance company had failed to define the particular coverage available to named drivers such as Marc Edward and, by extension, his son. Likewise in *Jensen*, the insurance company agreed that Jensen was an insured under the policy, but the Tenth District found that the policy did not define what coverage was available to him.

{¶ 26} Here the Auto-Owners policy at issue *did* identify the coverage available to Wetzel. As set forth more fully above, the liability portion of the policy extended coverage to anyone driving one of the work trucks with Wayne Wetzel's permission. Therefore, the scheduled drivers, including Wetzel, had liability coverage when they were driving the work trucks. The policy unambiguously did not provide Wetzel with underinsured-motorist coverage, however, because he was not driving a covered work truck at the time of his accident, and he was not the named insured, a spouse of the named insured, or a resident relative of the named insured. If Wetzel had been driving a work truck at the time of his accident, he would have been covered. Because he was driving his girlfriend's personal car, the Auto-Owners trucking policy issued to his father provided no coverage.

{¶ 27} To the extent that *Roelle* and *Jensen* might suggest a different result based on a perceived ambiguity in the Auto-Owners policy, we find them unpersuasive and respectfully decline to follow them. Both opinions expressed concern about paying premiums but not having coverage for a particular claim. As Auto-Owners notes, however,

"lack of coverage in a particular circumstance is not a total lack of coverage, if coverage applies in other circumstances." (Appellee's brief at 16). Auto-Owners also correctly notes that unlike *Roelle* and *Jensen*, where a specific premium apparently was paid to add a particular driver to the policy, the policy at issue here covered work vehicles without any apparent additional premium regardless of how many scheduled drivers there were. Indeed, the policy allowed Wayne Wetzel to change the scheduled drivers at will, which is consistent with our conclusion that being a scheduled driver merely signified that the driver had permission to operate the trucks.

{¶ 28} We note also that two Sixth District cases, *Moccabee v. Progressive Ins. Co.*, 6th Dist. Huron No. L-98-1069, 1998 WL 700670 (Oct. 9, 1998), *and Vanvlerah v. Doughty*, 6th Dist. Huron No. H-04-044, 2005-Ohio-3601, are consistent with our analysis herein. In *Moccabee*, the Sixth District upheld a finding that the plaintiff, Samuel Moccabee, was not an insured under an insurance policy issued to Raymond Nowak, his step-father. Although Moccabee was identified in the policy as an undefined additional "driver," that fact did not make him an insured. In rejecting his argument on that issue, the Sixth District reasoned:

> The policy declarations page is addressed to only Raymond Nowak, and clearly states that it is a "policy declaration" *for* Raymond Nowak. It is undisputed that Raymond Nowak was the party responsible for choosing the levels of available coverage and for paying the policy premiums Thus, it is clear and unambiguous that Raymond Nowak was the "named insured" on the policy, and that Norma Nowak was an "insured" under the policy by virtue of being Raymond Nowak's spouse and living in the same household

as Raymond Nowak. It is undisputed that appellant was not in the Nowak's vehicle when the accident occurred, and appellant is not otherwise a "spouse" or a "relative" as defined by the policy.

Upon consideration of the foregoing, we find that the term "insured," while not defined in the policy, unambiguously refers to only Raymond and Norma Nowak. Accordingly, the trial court did not err by finding that, although appellant is listed as a "driver" under the policy, appellant is not an "insured" under the policy, and appellant's first assignment of error is not well-taken.

*Moccabee* at *3-4.

{¶ 29} In *Vanvlerah*, an underinsured motorcyclist struck and injured a minor who was riding a bicycle. The minor's father, Timothy McGinn, was named as an additional driver on the declarations page of a policy issued to the minor's grandfather, James McGinn. Much like the *Rolle* case discussed above, Timothy McGinn argued that his status as an additional driver made him an insured entitled to underinsured-motorist coverage under James McGinn's policy. Based on the premise that he was an insured, Timothy argued that his minor child also was entitled to underinsured-motorist coverage as a family member. The Sixth District rejected this argument, reasoning:

This court has reviewed the disputed policy language. The sole named insured is James McGinn. His son, Timothy McGinn, is listed as an authorized driver of the insured vehicle. In the definitions portion of the policy, the language expressly states that a resident spouse of the name[d] insured is also covered by the policy. The policy also extends coverage to

family members of the named insured.

Family members are defined as those related by blood, marriage, or adoption who reside in the same household as the named insured. Timothy and [D.] McGinn did not reside with the named insured. No resident spouse was involved in the accident. The covered vehicle was not involved in the accident. The express language of the policy makes clear it does not encompass Timothy or [D.] McGinn. It provides no underinsured coverage for this accident.

Part C of the policy, the underinsured coverage provisions, specifically establishes that an "insured" is the named insured, a family member of the named insured, or anyone occupying the covered automobile. Thus, the plain language of the agreement unequivocally excludes coverage in this case.

Appellants' attempt to distinguish and redefine this court's ruling in *Moccabee v. Progressive Ins. Co.* (Oct. 9, 1998), 6th Dist. No. L–98–1069, is misleading and misplaced. Appellants proclaim that by affirming, this court would, in effect, be holding that *Moccabee* enables an insurance company to charge an additional premium to list an additional named driver while wholly denying coverage to that named driver. There is absolutely no evidence that an additional premium was charged in this case based upon the listing of Timothy McGinn as a driver.

The *Moccabee* ruling held that whether or not one is an "insured" under a policy is governed by the language of the policy itself and is not

controlled by whether or not that person is listed as an additional driver. That is precisely what the court is reaffirming in this case. The policy language in this case is not ambiguous. Pursuant to the language, there is no coverage. * * *.

*Vanvlerah* at ¶ 14-18; *see also Dea v. Johnson*, 8th Dist. Cuyahoga No. 90178, 2008-Ohio-3147, ¶ 12 ("In the instant case, plaintiff is not a named insured, nor is she an insured by virtue of being a 'relative' as defined by the policy. Furthermore, plaintiff is not an insured merely by being listed as an additional driver on the policy.").

{¶ 30} Finally, in his reply brief, Wetzel questions whom the extended underinsured-motorist coverage in the Auto-Owners policy was intended to protect. He reasons: "When a policy is issued for five large trucks and five scheduled drivers, who does Auto Owners think the Extended UIM coverage is for? If Auto Owners' intent was that it was only for Wayne D. Wetzel then Auto Owners should have said the Extended UIM coverage was only for Wayne D. Wetzel." (Appellant's reply brief at 2). Later in his reply brief, Wetzel questions: "If Auto Owners is insuring a trucking company with five large commercial trucks and five scheduled drivers, then who else would the Extended UIM coverage benefit?" (*Id.* at 5).

{¶ 31} But the Auto-Owners policy *did* identify the recipient of underinsured-motorist coverage. As explained above, the answer to Wetzel's inquiries resides in what we believe is the unambiguous language of the policy. It explicitly provided underinsured-motorist coverage to anyone occupying one of the covered trucks. It also provided extended underinsured-motorist coverage to the named insured (Wayne Wetzel), a resident spouse of the named insured, and a relative of the named insured not owning an

automobile. Shane Wetzel was not occupying one of the covered trucks. He was not the named insured, a resident spouse of the named insured, or a relative of the named insured who did not own an automobile. Therefore, he was not entitled to underinsured-motorist coverage under the terms of the Auto-Owners policy.

{¶ 32} Based on the reasoning set forth above, we overrule Wetzel's assignment of error and affirm the judgment of the Darke County Common Pleas Court.

. . . . . . . . . . . . .

FROELICH, J., and WELBAUM, J., concur.

Copies mailed to:

Craig A. Dynes
Ryan C. Dynes
Gordon D. Arnold
Patrick J. Janis
John Archer
Kevin Susman
Melissa Yasinow
Lorree Dendis
Erin Moore
Hon. Jonathan P. Hein